IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| OSCAR MCCULLOUGH<br>3495 Logstone Drive<br>Triangle, VA 22172<br><br>*Plaintiff,*<br><br>v.<br><br>ERIC HOLDER, Attorney General,<br>U.S. Department of Justice<br>Office of the Inspector General<br>1425 New York Ave., NW, Suite 7000<br>Washington, DC 20005<br><br>*Defendant.* | Case No.<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff, Oscar McCullough, by way of his attorney, Morris E. Fischer, Esq., hereby states the following complaint, on information and belief formed after reasonable inquiry under the circumstances, against Defendant:

## PARTIES

1. Plaintiff, Oscar McCullough, is an individual citizen and resident of Prince William County, Virginia.

2. Defendant, Eric Holder, in his official capacity as Attorney General of the U.S. Department of Justice.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 for claims arising under federal law, i.e., Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) et. seq.

4. At all times relevant to this case, Defendant has been an "employer" as defined by 42 U.S.C. § 2000e(b).

5. Venue is vested in this Court, since the facts giving rise to this case took place in the District of Columbia.

## FACTS

6. In March 2008, Plaintiff began employment with Defendant as a GS-12 Contracting Officer in the Office of Administrative Services, Management and Planning Division.

7. At all times relevant to this case, Plaintiff's immediate supervisor was Michael Barbour.

8. Plaintiff excels at his position and has received two Inspector General's Awards of Honor in 2009 and 2010 in recognition of significant contributions to the Office of the Inspector General.

**A. Harassment**

9. In around July 2011, Plaintiff's coworkers began to harass Plaintiff.

10. Human Resources Specialist Brandie Miller called Plaintiff many times and left sexually harassing messages on Plaintiff's government desk phone and government issued Blackberry voicemail.

11. Miller was harassing Plaintiff because Plaintiff had just ended a sexual relationship with Miller.

12. Miller left a message on Plaintiff's voicemail threatening to send flowers to Plaintiff's house.

13. Miller left a message on Plaintiff's voicemail saying that Miller was not going to stop calling Plaintiff and accused Plaintiff of having sex in his office with another OIG employee.

14. Miller stole a picture of Plaintiff's children from Plaintiff's office and left a message on Plaintiff's voicemail threatening to send the empty picture frame to Plaintiff's wife if Plaintiff did not continue the sexual relationship with her.

15. Senior Human Resources Specialist Kimberly Broden and Financial Management Analyst Tiffany Tilghman were Miller's friends.

16. Broden and Tilghman contributed to a hostile work environment against Plaintiff to support Miller.

17. Miller entered Plaintiff's office, flanked by coworkers Kimberly Broden and Tiffany Tilghman, berated Plaintiff and used foul language toward him.

18. Broden tried to physically assault Plaintiff in the hallway and called him a coward.

19. Broden and Tilghman would come into Plaintiff's office, close the door and berate him, curse him, and call him names like "bastard," "jackass," and "son of a bastard."

20. Miller stole several personal items from Plaintiff's office.

21. Tilghman threatened Plaintiff many times that she would physically harm Plaintiff.

22. Miller sent Plaintiff many threatening emails.

23. Broden sent an email where she called Plaintiff a coward.

### B. Plaintiff Informs Management of Harassment

24. In August 2011, Plaintiff was forced to leave work fearing for his safety after a very intense confrontation from Broden and Miller in the office hallway.

25. Plaintiff informed his supervisor Barbour of why he was leaving.

26. Plaintiff complained to his supervisor Barbour on several occasions about all of the above mentioned harassment.

27. Barbour would simply reply, "You have to write it all down."

28. Plaintiff also complained on several occasions about all of the above mentioned harassment to Miller's and Broden's supervisor, Cindy Lowell, Director of Human Resources.

29. After Plaintiff forwarded a harassing email from Broden and a sexual harassing and threatening voicemail from Miller to Lowell, Lowell asked, "Well who ended the relationship?" Plaintiff replied he did. Lowell then stated "Well she is bitter."

30. In September 2011, Plaintiff informed Lowell about the theft of his personal items.

31. Lowell replied, "They said you stole your own stuff."

32. Lowell also informed Plaintiff that there would not be a big CSI investigation into the missing items.

33. In an email dated December 19, 2011 Lowell stated that the theft would be reported and that someone would take a report but there is no guarantee the items would be found.

34. To this date no formal investigation has been conducted concerning the reported theft from Plaintiff's office nor has the issue been addressed formally.

35. Instead, in an effort to protect Miller and Broden, Lowell urged Greg Peters, Assistant Inspector General (AIG) of Management and Planning, and Linda Ruder, Deputy Assistant Inspector General (DAIG) of Management and Planning, to address the less egregious issues of rumors and gossiping instead of the more serious issues of sexual harassment and theft.

36. As a result, the OIG issued a "No Gossiping and No Rumors" policy on October 5, 2011.

37. In November 2011, Plaintiff informed management about the continued sexual harassment he was subjected to.

## C. Demotion of Plaintiff's Performance Rating

38. On December 11, 2011, Plaintiff received a demotion in a rating on his 2011 performance appraisal

39. As a result, Plaintiff was denied a performance based award.

40. One of Plaintiff's female coworkers who received the highest rating on her performance appraisal had significant behavioral problems and was placed on leave restriction.

41. Another female coworker who received a monetary honor award and the second highest rating on her performance appraisal also had significant behavioral issues and continues to have issues.

## D. EEO Complaints and Management's Responses

42. On January 3, 2012, Plaintiff spoke with Steve Fallowfield of the Office of General Counsel (OGC). Plaintiff allowed Fallowfield to listen to all 8 of the sexually harassing voicemails.

43. Fallowfield stated that the OIG would contact the employees to stop the harassing behavior.

44. On January 31, 2012, after Plaintiff inquired about the progress of the grievance investigation, Fallowfield responded via email that he wanted to make it clear to Plaintiff that the OIG and OGC were not conducting a grievance investigation.

45. On December 13, 2011, Plaintiff initiated an EEO complaint regarding the sexual harassment he was subjected to.

46. On February 24, 2012, Plaintiff reported to Barbour additional incidents of a Hostile Working Environment.

47. After reporting these incidents to Barbour, Plaintiff was summoned to AIG Greg Peters' office where Peters scolded Plaintiff and stated that he expected every employee to conduct themselves professionally and he would not tolerate any behavior that prevented the OIG in performing its mission.

48. Plaintiff inquired as to why was he being lectured when Plaintiff was attempting to report on the issue of continuous harassing behavior that Plaintiff was being subjected to.

49. Peters replied that he did not want to hear about Plaintiff's alleged harassment and that the Office of General Counsel was looking into that matter and he would let them handle that.

50. On March 19, 2012, Plaintiff requested to work an alternate work schedule to avoid the physical threats, hostile and aggressive behavior directed at Plaintiff.

51. The request was denied.

e. Denying a sick leave request made by Plaintiff;

f. Suspending Plaintiff without pay for seven consecutive business days from August 22, 2012 through August 30, 2012.

g. Denying Plaintiff's request for training that Plaintiff made on September 25, 2012;

h. Denying Plaintiff's request for four hours of advanced sick leave;

i. Forcing Plaintiff to take leave without pay.

72. Defendants' aforementioned conduct reflects directly on a discriminatory attitude toward Plaintiff.

73. Defendant's conduct was malicious, willful and intentional.

74. Defendant's aforementioned actions against Plaintiff were based on his gender.

75. Plaintiff's gender was a motivating factor in Defendant's discriminatory treatment of Plaintiff.

76. Plaintiff's gender was the motivating factor in Defendant's discriminatory treatment of Plaintiff.

77. The aforesaid discriminatory treatment of Plaintiff caused tangible harm to Plaintiff in that it affected the terms, conditions and privileges of his employment.

78. Other similarly situated employees not of Plaintiff's gender were not subject to the same conditions of employment as Plaintiff.

79. A causal connection exists between Defendant's discriminatory actions and Plaintiff's gender.

80. Defendant's actions caused Plaintiff monetary damages.

81. In addition to the above, Plaintiff also suffered anguish, anxiety, fear, helplessness, shock, humiliation, insult, embarrassment, illnesses related to stress, and other damages.

## COUNT II
## RETALIATION

82. Plaintiff hereby adopts all aforesaid paragraphs as if fully reproduced herein.

83. Defendant retaliated against Plaintiff, in violation of Title VII of the Civil Rights Act of 1964, and 42 U.S.C. § 2000(e) et seq., by:

    a. Suspending Plaintiff without pay for seven consecutive business days from August 22, 2012 through August 30, 2012.

    b. Denying Plaintiff's request for training that Plaintiff made on September 25, 2012;

    c. Denying Plaintiff's request for four hours of advanced sick leave;

    d. Forcing Plaintiff to take leave without pay.

84. Defendant's aforementioned actions against Plaintiff were taken in retaliation for opposing unlawful employment practices in violation of 42 U.S.C. §2000e-3.

85. Plaintiff engaged in protected activity by filing EEO complaints and reporting gender discrimination to management.

86. Defendant was aware of Plaintiff's protected activity.

87. The aforementioned actions caused tangible harm to Plaintiff in that they affected the terms, conditions and privileges of his employment.

88. Plaintiff's protected activity was a motivating factor in Defendant's aforementioned actions.

89. Plaintiff's protected activity was the motivating factor in Defendant's aforementioned actions.

90. Other similarly situated employees who did not participate in such complaints were not subject to the same conditions of employment as Plaintiff.

-12-

91. A causal connection exists between Defendant's aforementioned actions and Plaintiff's protected activity.

92. Defendant's action caused Plaintiff monetary damages.

93. In addition to the above, Plaintiff also suffered anguish, anxiety, fear, helplessness, shock, humiliation, insult, embarrassment, illnesses related to stress, and other damages.

## **PRAYER FOR RELIEF**

**WHEREFORE,** the Plaintiff demands:

A. Correction of his 2011 performance evaluation to "outstanding" level;

B. A performance based award;

C. Restoration of all annual and sick leave;

D. Maximum compensatory damages;

E. Attorney fees;

F. Personnel record expunged of all alleged inappropriate behavior.

G. All other relief that the Court deems appropriate.

Respectfully Submitted,

_____
Morris E. Fischer, Esq.
1400 Spring Street
Suite 350
Silver Spring, MD 20910
(301) 328-7631 phone
(301) 328-7638 fax
Attorney for Plaintiff

## JURY DEMAND

Plaintiff herein demands a jury for all issues to be tried in this case.

Respectfully Submitted,

_____
Morris E. Fischer, Esq.
1400 Spring Street
Suite 350
Silver Spring, MD 20910
(301) 328-7631 phone
(301) 328-7638 fax
Attorney for Plaintiff